JOURNAL ENTRY AND OPINION
Paul Danforth appeals from a domestic relations court judgment denying his motion to modify child support and finding him in contempt of court for failure to pay a child support arrearage in the amount of $31,726.19.
The history of this case reveals that on August 4, 1983, the court granted a divorce to Devra Danforth and awarded her the custody of the two minor children, Shannon (DOB 6-4-75) and Megan (DOB 3-16-80). At the time, the court ordered Paul to pay child support of $55.00 per week, per child. Thereafter, the court modified Paul's obligation to $60.00 per week, effective June 7, 1985. On December 18, 1986, the court, pursuant to Devra's Motion to Show Cause, entered an agreed judgment entry, under which Paul Danforth agreed to pay a lump sum of $2,500, plus $50 per month toward a $3226 arrearage and remained fully obligated to pay a current support of $120 per week.
Thereafter, on November 22, 1988, Paul filed a pro se Motion to Reduce Child Support. In response, on November 30, 1988, Devra filed a Motion to Reduce Child Support Arrearages to a Lump Sum Judgment. The court held a hearing on January 30, 1989, where both Paul and Devra appeared, and on March 9, 1989, denied Paul's motion to reduce child support but granted Devra's motion and entered a lump sump arrearage judgment of $2739.48. Paul neither sought post-judgment relief nor appealed from these judgments. Subsequently, on July 20, 1992, Paul and Devra appeared before an administrative assistant pursuant to a court order for the purpose of determining whether the Bureau of Workers Compensation should forward a lump sum payment to Cuyahoga County Child Support Enforcement Agency (CSEA) to be applied toward the arrearages. On that day, Paul and Devra signed an agreed judgment entry, journalized on August 4, 1992, which listed Paul's arrears at $21,971.89 as of July 20, 1992 and his agreement to pay $120 per week plus an additional $50 per week towards the arrearage. Again, Paul neither filed any post-judgment motion seeking relief nor appealed from that judgment. In response to a subpoena issued by CSEA pursuant to its routine auditing practice, Paul produced copies of his 1989, 1990, and 1991 tax returns on July 30, 1992.
Almost six years later, on March 12, 1998, four days before the termination of his child support obligations, Paul filed a Motion to Modify Support. On April 14, CSEA filed a Motion to Show Cause. The magistrate held a hearing on October 6, 1998 and continued it on May 3, 1999. During the proceedings, the parties stipulated that Shannon became emancipated on June 12, 1993 and Megan on March 16, 1998. The parties also stipulated that Devra had received a total payment of $7,200 rom Paul and a lump sum payment of $3393.48 from the Ohio Bureau of Workers Compensation.
At the hearing, Paul testified that he has worked as a cab driver since 1992, and as a self-employed photographer. The court admitted into evidence Paul and Devra's tax returns since 1992. Both Paul and Devra testified that they appeared before Judge Maxwell on January 30, 1989, who inquired into Paul's child support obligations and his ability to pay.
Following the hearing, on October 29, 1999, the magistrate granted CSEA's Motion to Show Cause, finding Paul in contempt and ordering him to pay child support in the amount of $31,726.19 as of May 3, 1999, and further denying his Motion to Modify Support on the grounds that (1) the previous judgments had never been vacated; (2) he failed to present evidence which would meet any of the requisite threshold tests for vacating a prior judgment; (3) R.C. 3113.21(M)(3)strictly prohibits a court to retroactively modify an obligor's duty to pay a delinquent support payment; and (4) he failed to present evidence which could be construed as a change in circumstances pursuant to R.C. 3113.215(B)(4) so as to warrant a reduction in his support obligation for Megan from the date of the filing of the instant action, March 12, 1998, to the date of her emancipation, March 16, 1998. On February 4, 2000, Paul filed objections to the magistrate's decision. On April 13, 2000, the court overruled the objections and adopted the magistrate's decision. Paul now appeals from this order of the court.
He raises five assignments of error for our review. Since his first, third, and fourth assignments of error concern the same underlying issue regarding the lack of a hearing for his 1988 motion to reduce child support, we consider these assignments of error together. They state:
 I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO MODIFY CHILD SUPPORT RETROACTIVELY FROM APPELLANT'S PRIOR FILING OF A PRO S.E. MOTION TO MODIFY CHILD SUPPORT WHEN THE RECORD INDICATES THAT NO HEARING WAS HELD UPON SAID MOTION.
 III. WHETHER THE TRIAL COURT DENIED APPELLANT HIS RIGHT TO DUE PROCESS IN SUSTAINING THE ORDER FROM MARCH 6, 1989 WHEN NO HEARING WAS HELD WHERE APPELLANT COULD PRODUCE EVIDENCE IN SUPPORT OF HIS MOTION TO MODIFY CHILD SUPPORT.
 IV. WHETHER THE TRIAL COURT ERRED IN FINDING APPELLANT IN CONTEMPT WHEN THE TRIAL COURT COMPUTED THE ARREARAGES OWED FROM THE MARCH 9, 1989 ORDER AND DID NOT ALLOW APPELLANT TO PRODUCE EVIDENCE OF HIS INABILITY TO PAY SAID ARREARAGES.
Paul asserts that the court violated his constitutional due process rights by holding him in contempt of court because he claims that the court denied his 1988 motion to modify child support without a hearing.
CSEA asserts that Paul waived any claim of procedural defects in the 1989 judgments because he neither sought relief nor appealed from the judgments, and further because Paul signed an agreed judgment entry on July 20, 1992, consenting to the arrearage of $21,971 and his ongoing obligation of $120 per week. CSEA also asserts that the trial court cannot retroactively modify a previously adjudicated arrearage or a child support order beyond the date of the filing of the motion.
The issue then presented for our review concerns whether the court denied Paul due process when it refused to retroactively modify his child support obligation.
We begin by noting that we review an appeal from the domestic relations court under an abuse of discretion standard. Rock v. Cabral (1993),67 Ohio St.3d 108, 112. See also, Booth v. Booth (1989), 44 Ohio St.3d 142
(applying abuse of discretion standard to matters involving child support). Furthermore, the term "abuse of discretion" connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. Rock v. Cabral,67 Ohio St.3d at 112. When applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161; Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131.
R.C. 3113.21 governs the modification of child support, providing in relevant part:
 (M)(3) Except as provided in division (M)(4) of this section, a court may not retroactively modify a obligor's duty to pay a delinquent support payment.
 (M)(4) A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered.
Furthermore, the court in Gerlach v. Gerlach (1997), 124 Ohio App.3d 246,304 stated:
 It is clear that a trial court may retroactively modify a child support award back to the date the motion to modify such support payments was filed, where equitable considerations require such modification. See e.g., State ex rel. Draiss v. Draiss (1990), 70 Ohio App.3d 418, 421, 591 N.E.2d 354; Murphy v. Murphy (1984), 13 Ohio App.3d 388, 389, 469 N.E.2d 564; and Hamilton v. Hamilton (1995), 107 Ohio App.3d 132, 139-140, 667 N.E.2d 1256. However, retroactive modification of child support beyond the date when the motion to amend such support is filed is strictly prohibited by R.C. 3113.21(M). See Hamilton; Tobens v. Brill (1993), 89 Ohio App.3d 298, 304, 624 N.E.2d 265; Osborne v. Osborne (1992), 81 Ohio App.3d 666,674-675, 611 N.E.2d 1003 (absent proof of fraud upon the court retroactive modification of child support beyond the date of the motion is prohibited).
Our analysis of the issue presented reveals that it is not well taken for four reasons: first, a hearing did take place on his 1988 motion; second, he never sought relief nor appealed from the judgments; third, he signed an agreed judgment entry in 1992 affirming his arrearages and ongoing obligations; and fourth, the law is clear that a trial court cannot retroactively modify a child support order beyond the filing date of the motion.
Contrary to Paul's allegations that no hearing took place, a review of the record indicates that Judge Maxwell held a hearing on January 30, 1989 to consider Paul's motion to modify child support and Devra's motion to reduce installment child support arrearages to a lump sum judgment. Consistent with the court's reference to the January 30, 1989 hearing in its March 9, 1992 journal entry granting Devra's motion, both Devra and Paul testified that they appeared before Judge Maxwell, even though the court did not specifically refer to the hearing in its order denying Paul's motion to reduce child support. Paul's claim that no hearing took place on January 30, 1989, pointing to a calendar-log purporting to show the lack of assignment of a court reporter for the Danforth matter, is not conclusive and is contradicted by the record.
More importantly, Paul failed to timely challenge any perceived procedural defect in the court's 1989 judgments. In fact, not only did he fail to seek relief or appeal from the judgments, he affirmed his arrearage of $21.971.89 and his continuing child support obligation of $120 per week several years later by consenting to and signing the agreed judgment entry on July 20, 1992.
Paul complains that the trial court erroneously allowed the 1992 agreed judgment entry because CSEA failed to complete a required child support computation worksheet, citing Marker v. Grimm (1992) 65 Ohio St.3d 139, where the court held that the terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects. When calculating the amount of an obligor's support obligation under R.C.S3113.215, the trial court must complete a child support computation worksheet and make it a part of the trial court's record. Paul's claim ignores the fact that in 1992, there was no motion to modify support before the court. In Andrulis v. Andrulis (1985),26 Ohio App.3d 164, the court addressed this issue:
 Absent a motion for modification of support, the trial court's continuing jurisdiction over support is not invoked. Modification of support may be accomplished only after notice and hearing on such motion.
In 1992, Paul did not file a motion to modify child support invoking the court's jurisdiction. Rather, the court filed the agreed judgment entry pursuant to a proceeding to determine whether a lump sum payment from the Bureau's Worker's compensation should be released to Devra. Therefore, the court did not err in allowing the 1992 agreed judgment entry without a support computation worksheet.
In any event, although a trial court may retroactively modify a child support order back to the date of the filing of a motion pursuant to R.C. 3113.21(M)(3), the statute simply prohibits a court from retroactively modifying an obligor's duty to pay previously adjudicated arrearage or duty to pay delinquent support beyond the date of the filing of the motion. Geralch, supra at 304. See, also, Polomsky v. Polomsky (March 16, 1989), Cuyahoga App. No. 55105, unreported. In the instant action, Paul filed his motion to modify child support on March 12, 1998. Therefore, the trial court did not err in refusing to modify his child support obligations as of March 12, 1998.
In addition, in his fourth assignment of error Paul alleges that the trial court erred in not allowing him to produce evidence regarding his ability to pay the arrearages. Contrary to his allegations, the record indicates that the trial court admitted both his and Devra's tax returns from 1992 to 1997 as evidence and that Paul testified as to his employment since 1992 on direct examination.
For the foregoing reasons, we overrule Paul's first, third, and fourth assignments of error.
Paul's second assignment of error states:
 II. WHETHER THE TRIAL COURT ERRED IN STATING THAT APPELLANT FAILED TO PRODUCE ANY CREDIBLE EVIDENCE TO DEMONSTRATE HIS INABILITY TO PAY HIS CHILD SUPPORT OBLIGATION.
Paul contends that he offered as evidence his tax returns for the years 1992 to 1997 in support of his inability to pay as a defense to the contempt charges and he asserts that the court did not consider this evidence. CSEA asserts that the evidence presented at the hearing proved that Paul had been gainfully employed and that his claim of inability to pay conflicted with the evidence.
The issue for our review here concerns whether the court erred in finding that Paul failed to present evidence sufficient to prove his inability to pay.
Addressing the issue of the inability to pay defense to a civil contempt charge, the court in Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140
stated:
 In State, ex rel. Cook v. Cook (1902), 66 Ohio St. 566, this court held in paragraph one of the syllabus:
 "In a proceeding in contempt against a party who has refused to comply with a money decree for alimony, it is not essential that the complaint allege that the party is able to pay the money. The decree imports a finding of the court that he is able to pay, and the burden is on him, by allegation and proof, to establish his inability." (Emphasis added.)
 The Cook decision was cited with approval in Bly v. Smith (1916), 94 Ohio St. 110, where this court at 114 stated:
 "Now, upon the contempt hearing before the court of common pleas, that burden of showing his inability [to pay] was upon the * * * [contemnor] * * *."
Here, the trial court admitted Paul's tax returns from 1992 into evidence. Paul also testified that he had been employed as a cab driver since 1992 and in addition as a self-employed photographer currently. Therefore, we cannot say that the trial court, after examining all available evidence, abused its discretion when it found that Paul failed to carry his burden of proving his inability to pay. Consequently, we overrule Paul's Second Assignment of Error.
Paul's Fifth Assignment of Error states:
 V. WHETHER THE TRIAL COURT ERRED IN FINDING APPELLANT IN CONTEMPT OF COURT WHEN THE CUYAHOGA COUNTY CHILD SUPPORT AGENCY FAILED TO MAINTAIN EVIDENCE WHICH WAS EXCULPATORY IN NATURE.
Paul contends that CSEA failed to maintain his 1989, 1990 and 1991 tax returns he produced in 1992 in response to a subpoena issued by CSEA, which he claims would have been exculpatory to the charge of contempt. Paul complains that had the tax returns been part of the record and examined, they would have shown his inability to pay in those years. CSEA claims it had no duty to maintain evidence which could assist Paul in defending against a contempt finding.
The issue for review is then whether the trial court erred in finding Paul in contempt when CSEA failed to maintain Paul's tax returns from 1989 to 1991.
Here, because the trial court lacks the power to retroactively modify child support beyond March 12, 1998, the only issue properly before the trial court concerned whether there existed a change in circumstances resulting in Paul's inability to pay after March 12, 1998. Therefore, Paul's tax returns from 1989 to 1991 do not provide either relevant or material evidence for the matter before the court. Consequently, the failure of CSEA to maintain these documents does not prejudice Paul and we overrule this assignment of error.
The judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________ JUDGE TERRENCE O'DONNELL